**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON**

**CIVIL ACTION NO. 13-22-WOB-CJS**

**MICHAEL WAYNE EVERSOLE**                                                     **PLAINTIFF**

**v.**                       **REPORT AND RECOMMENDATION**

**CAROLYN W. COLVIN,
Acting Commissioner of Social Security[1]**                                       **DEFENDANT**

\* \* \* \* \* \* \* \* \* \*

Plaintiff Eversole brings this action under 42 U.S.C. § 405(g), challenging Defendant Commissioner's final decision denying his application for benefits under the Social Security Act. Plaintiff has made several arguments, but the key question here is whether the Administrative Law Judge (ALJ) erred by determining that Plaintiff's medical condition had significantly improved since the time of the previous administrative decision. For the reasons explained herein, it will be recommended that the Commissioner's Motion for Summary Judgment (R. 13) be **denied,** that Plaintiff's Motion for Summary Judgment (R. 10) be **granted in part and denied in part,** and that this matter be **remanded** for further consideration.

**I.     STANDARD OF REVIEW AND THE ADMINISTRATIVE PROCESS**

In reviewing the decision of an ALJ in social security cases, the only issues before the reviewing court are whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Blakley v.*

---

[1]On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration. Under Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Colvin is substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

*Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Blakley*, 581 F.3d at 406. "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Id*. (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Thus, even if the evidence could also support another conclusion, the decision of an ALJ must stand if the evidence could reasonably support the conclusion reached. *Id.* (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

In this case, Plaintiff must establish that he is disabled within the meaning of the Social Security Act in order to qualify for benefits. 42 U.S.C. § 423(a)(1). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Act requires the Commissioner to follow a five-step process when making a determination on a claim of disability. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). First, a claimant must demonstrate that he is not currently engaged in "substantial gainful activity." *Vance*, 260 F. App'x at 803 (citing 20 C.F.R. §§ 404.1520(b), 416.920(b)). Second, if the claimant is not engaged in substantial gainful activity, he must demonstrate that he suffers from a severe impairment. *Id*. at 803-04. "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'" *Id*. at 804 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). Third, if the claimant is not

performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment located at 20 C.F.R. pt. 404, subpt. P, app. 1, then the claimant is presumed disabled regardless of age, education or work experience. *Id.* (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)). Fourth, the claimant is not disabled if his impairment(s) does not prevent him from doing his past relevant work. *Id.* Lastly, even if the claimant cannot perform his past relevant work, he is not disabled if he can perform other work which exists in the national economy. *Id.* (citing *Abbott*, 905 F.2d at 923). Throughout this process, the claimant carries the overall burden of establishing that he is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy. *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This matter concerns Plaintiff's second application for Social Security benefits. Plaintiff's prior application was for Title II and Title XVI benefits, and ALJ Keller denied this application on March 15, 2008, noting that Plaintiff was able to perform limited sedentary work.[2] (A.R. 14, 56). This prior decision is administratively final.

Turning to the current matter, on April 20, 2010, Plaintiff protectively filed an application for supplemental security income, claiming disability beginning August 1, 2003. (A.R. 14). He alleged that he was disabled because of problems with his right hip, degenerative disc disease, and

---

[2] 20 C.F.R. § 416.967(a) notes,
Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

his S1 nerve. (*See id.* at 143). Defendant denied this claim initially and upon reconsideration. (A.R. 14). Plaintiff requested a hearing before an ALJ, and a hearing was held on August 10, 2011, before ALJ Reynolds. (*Id.*). A vocational expert (VE) testified at that hearing, and Plaintiff was represented by counsel. (*See id.*).

The ALJ used the five-step sequential process to determine that Plaintiff was not disabled. (*See* A.R. 16-17). Plaintiff was fifty years old at the time of ALJ Reynolds's decision, had a ninth grade education, and had worked in the past as a horse groom, construction laborer, and painter. (*Id.* at 17). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful employment activity since April 20, 2010, the application date. (*Id.*).

At step two, the ALJ determined that Plaintiff had the following severe impairments: congenital hip and low back pain secondary to degenerative disc disease of the lumbar spine with disc bulges and mild neuroforaminal narrowing; mild obesity; alcoholism; benzodiazepine, marijuana, and opioid dependency, allegedly in remission; degenerative joint disease of the bilateral knees; anxiety, not otherwise specified; and borderline intellectual functioning to low average intellectual functioning. (A.R. 17).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments under the applicable Federal Regulations. (A.R. 18).

At step four, the ALJ considered the evidence and determined that Plaintiff had the residual functioning capacity (RFC) to perform jobs at the light exertional level,[3] subject to several

---

[3]For Social Security purposes, light work entails the ability to lift up to twenty pounds at one time, with frequent lifting or carrying of objects weighing up to ten pounds. *See* 20 C.F.R. § 404.1567(b) (2013). Jobs in this category may require a "good deal" of walking or standing, or when the job requires sitting most of the time with some pushing and pulling of arm and leg controls. *See id.*

4

limitations. (*See* A.R. 22- 23). In making this determination, ALJ Reynolds explicitly rejected ALJ Keller's opinion from 2008 that Plaintiff could perform limited sedentary work, and rejected the assessments of Kentucky Disability Determination Services. (*See id.* at 23).

The ALJ proceeded to step five and adopted the VE's opinion that, given the stated RFC, there were unskilled, light exertion-level jobs in the national economy that Plaintiff would be able to perform, namely assembly and hand packing. (*See* A.R. 25). Accordingly, on September 16, 2011, ALJ Reynolds determined that Plaintiff was not "disabled," for social security purposes. (*Id.*).

Plaintiff appealed the ALJ's decision to the Social Security Appeals Council. On November 29, 2012, the Appeals Council affirmed the ALJ's determination, thereby making the ALJ's September 16, 2011, decision denying Plaintiff benefits the final decision of the Commissioner. (A.R. 1-3).

On January 24, 2013, Plaintiff, having exhausted his administrative remedies, timely filed a Complaint asserting that the ALJ's decision was erroneous. (*See* R. 1). The matter has culminated in cross-motions for summary judgment. (R. 10, 13). These Motions have been referred to the undersigned for preparation of a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B) (R. 3), and the Motions are now ripe for consideration.

### III. ANALYSIS

Plaintiff raises the following three arguments on appeal: (1) ALJ Reynolds should not have discounted the prior determination by ALJ Keller that Plaintiff could only do a limited range of sedentary work, nor should ALJ Reynolds have rejected the opinion of consultative examiner Alireza Abdolmohammadi, M.D.; (2) Plaintiff meets listing 1.04 because of his medical conditions; and (3)

Plaintiff met Grid Rule 201.09 on his fiftieth birthday because he was closely approaching advanced age, had a limited education, and performed unskilled work. (*See* R. 10, at 1).

    **A.    ALJ Reynolds's decision is deficient because it does not sufficiently show how Plaintiff's condition significantly improved from the time of the first disability determination.**

Plaintiff argues that ALJ Reynolds erred by discounting the prior determination of ALJ Keller—which indicated that Plaintiff could only do a limited range of sedentary work. (*See* R. 10-1, at 4; A.R. 63). ALJ Reynolds's decision was flawed, says Plaintiff, because there had been no change in applicable law, and there was no new and material evidence before the ALJ that justified an expansion of Plaintiff's RFC. (*See* R. 10-1, at 4). Plaintiff also criticizes the ALJ for discounting the consultative examination of Dr. Abdolmohammadi, which evaluation diagnosed Plaintiff with degenerative disc disease with disc bulges from L1-2 through L5-S1 with decreased range of motion in the back and hips, resulting in restrictions in lifting and walking. (*See id.* at 5).

    **1.    The *Drummond* Standard**

The Sixth Circuit Court of Appeals established in *Drummond v. Commissioner*, "that the principles of res judicata can be applied against the Commissioner." 126 F.3d 837, 842 (6th Cir. 1997). Accordingly, "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." *Id.* Furthermore, "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." *Id.* (citing *Lively v. Sec'y of Health & Human Servs.*, 820 F.2d 1391 (4th Cir. 1987)); *see also Dennard v. Sec'y of Health & Human Servs.*, 907 F.2d 598 (6th Cir. 1990) (per curiam) (holding that a second ALJ was precluded from reconsidering whether plaintiff could perform his past relevant work). In *Drummond*, the Sixth

6

Circuit held, through the application of *res judicata*, that the Commissioner was bound by its prior determination that the claimant had the RFC to perform sedentary work because, "substantial evidence was not introduced that [claimant's] condition improved significantly between the two hearing dates." 126 F.3d at 843. Thus, considering the claimant's age at the time of her second application and limitation to sedentary work, the Sixth Circuit found her eligible for benefits and remanded the case with instructions for the district court to remand the case to the Commissioner for an award of benefits. *Id.*

In light of the holding in *Drummond*, the Commissioner issued an Acquiescence Ruling directing state agencies within the Sixth Circuit to follow *Drummond* by applying *res judicata* to a prior assessment of a claimant's RFC as well as other findings required in the sequential evaluation process for determining disability. This Ruling explained the following:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the [Social Security] Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

SSAR 98-4(6), 63 Fed. Reg. 29771-01 (June 1, 1998). And the Sixth Circuit noted, "[t]he burden is on the Commissioner to prove changed circumstances and therefore escape the principles of res judicata." *Drummond*, 126 F.3d at 843.

### 2. ALJ Keller's 2008 Opinion

ALJ Keller considered Plaintiff's alleged disability from March 8, 2006, through March 15, 2008. (*See* A.R. 56, 60). ALJ Keller determined that Plaintiff suffered from congenital hip and back pain of unknown etiology, with leg and back pain as a result of a motor vehicle accident. (*Id.* at 61).

7

But Plaintiff retained the RFC to perform limited sedentary work and therefore was not disabled. (*Id*. at 63).  ALJ Keller noted that Plaintiff, "can sit for six hours per workday, and can stand or walk up to two hours per day." (*Id*.).  Furthermore, ALJ Keller noted that Plaintiff, was "able to sustain a reasonable walking pace sufficient to carry out activities of daily living, including traveling without the need for companion assistance." (*Id*.).

In making this decision, ALJ Keller noted that there were no medical records before 2006. (A.R. 64).  But ALJ Keller examined medical records dated after the 2006 alleged disability date. For example, ALJ Keller noted a lumbosacral spine x-ray from April 13, 2006, which showed moderate degenerative disc space narrowing at L5-S1, but was otherwise normal. (*See id*. at 62, 228).  A lumbosacral spine MRI from August 11, 2006, revealed disc protrusion at L5-S1—contacting with the S1 nerve root, and degenerative facet changes at L4-L5 and L5-S1. (*See id*. at 62, 231).  An October 25, 2006, report from Amr El-Naggar, M.D. noted that Plaintiff had moderate degenerative disc disease at L5-S1; however, Dr. El-Naggar found no evidence of nerve root compression or disc herniation. (*Id*. at 62 (emphasis omitted), 232).  And a May 1, 2007, report from Phillip Tibbs, M.D.,[4] indicated that Plaintiff had a positive Patrick's test and suffered from degenerative disc disease. (*Id*. at 62, 210-11).  Dr. Tibbs also advised against surgery. (*Id*. at 211).

### 3. ALJ Reynolds's 2011 Opinion

ALJ Reynolds examined Plaintiff's alleged disability from April 20, 2010, through September 16, 2011. (A.R. 17, 25).  ALJ Reynolds said that he, "[did] not adopt the residual functional capacity assessed by Judge Keller in the 2008 decision, for *Drummond* purposes, as there

---

[4] Dr. Tibbs provided a neurosurgical consultation, upon referral by the Commissioner. (*See* A.R. 62, 210).

8

[was] evidence that the claimant [was] now not as physically limited than was the case in 2008." (A.R. 14). As discussed below, ALJ Reynolds placed particular—though not exclusive—emphasis on two MRI studies and Plaintiff's numerous and lengthy car trips to Florida and Georgia to obtain prescription medications. Upon consideration, ALJ Reynolds's decision to reject the previous administrative opinion was not supported by substantial evidence.

###### a.     The 2008 and 2010 MRIs

ALJ Keller discussed medical evidence that indicated that Plaintiff had moderate degenerative disc disease and disc protrusion, among other symptoms. Later, ALJ Reynolds reviewed the medical evidence of record, including several of the sources examined by ALJ Keller, mentioned above. (*See* A.R. 18). ALJ Reynolds then discussed two MRIs that were conducted after ALJ Keller's determination. ALJ Reynolds said the following of the first MRI: "[MRI] of the lumbar spine performed on 07/28/08 in Florida in connection with a pain clinic there, showed grade 1 spondylolisthesis at L4-5, retrolisthesis at L5-S1, disc bulging at L5-S1 and mild neural encroachment at L5-S1." (*Id.* at 18). However, this description of the MRI results by ALJ Reynolds is incomplete. Among other findings, the MRI notes the following: "moderate" disc bulging at T11-12; and "moderate to severe diffuse disk bulging at L5-S1. There is bilateral facet hypertrophy at this level. There is severe impingement upon the bilateral lateral recesses," although there was "no significant spinal stenosis." (A.R. 212-13).

The ALJ said the following about the second MRI: "A [MRI] done in Plantation, Florida on 09/13/10 showed only mild degenerative disc disease at L4-S1 with bilateral neural foraminal stenosis at L5-S1." (*See* A.R. 18). Again, this description is incomplete. Douglas Hornsby, M.D., who signed the MRI report, provided the following "impression" of Plaintiff's condition:

      (1)      Desiccation of the discs increasing in dessication with increasing number of the discs.

      (2)      At L5-S1, irregularity of the endplates with loss of height of the intervertebral discs and bilateral facet hypertrophy with a posterior bulge of the intervertebral disc and bilateral neural foraminal stenosis.

      (3)      At L4-L5, posterior bulge of the intervertebral facet hypertrophy without neural foraminal narrowing.

(A.R. 314 (formatting altered)).

The MRIs from 2008 and 2010 revealed, among other conditions, moderate to severe diffuse disc bulging, severe impingement upon the bilateral lateral recesses, desiccation of the spinal discs, and bilateral neural foraminal stenosis. But ALJ Reynolds did not discuss these particular findings; rather, he noted only his incomplete observations discussed above. Nor did he clearly juxtapose the MRIs considered by ALJ Keller with the latter MRIs in order to adequately support and explain his conclusion that Plaintiff's medical condition had significantly improved since the time of ALJ Keller's decision.

### b. Dr. Abdolmohammadi's Opinion

ALJ Reynolds discussed consultative examiner Alireza Abdolmohammadi, M.D.'s opinion from July 17, 2010. (*See* A.R. 18, 278). Dr. Abdolmohammadi had performed the evaluation at the request of the Commissioner, and he diagnosed Plaintiff with degenerative disc disease with bulges from L1-2 through L5-S1, which prevented Plaintiff from "lifting and carrying even moderately heavy objects." (*Id*. at 18, 278, 282). But ALJ Reynolds rejected Dr. Abdolmohammadi's opinion because, "it is allegedly based on the MRI findings, which indicate otherwise." (*Id*. at 18).

ALJ Reynolds, however, did not adequately explain how the MRI results contradict Dr. Abdolmohammadi's findings. Dr. Abdolmohammadi said, in relevant part, the following: "There

is an MRI report of his thoracic and lumbosacral area, which reports grade I spondylolisthesis at L4-L5 and disk bulging at T11-T12. Also, it reports disk bulging from L1-L2 through L5-S5, most severe at the L5-S1 level." (A.R. 278). It appears that Dr. Abdolmohammadi was referencing the July 28, 2008, MRI. The "impression" section of that MRI report contains these findings:

> Grade I spondylolisthesis at L4-L5 and Grade I retrolisthesis at L5-S1.
>
> Disk bulging at T11-T12. . . .
>
> Disk bulging from L1-L2 through L5-S1, most severe at the L5-S1 level.

(*Id*. at 213 (formatting in original)). This MRI also indicated that Plaintiff had "moderate to severe diffuse disk bulging at L5-S1" and "severe impingement upon the bilateral recesses." (*Id*. at 212-13). ALJ Reynolds did not explain how these findings from the July 28, 2008, MRI report undermine Dr. Abdolmohammadi's opinion.

Dr. Abdolmohammadi also considered a spinal x-ray report from April 26, 2010. (A.R. 278-79; *see id*. at 273). The x-ray report indicates moderate arthritis in the mid and lower lumbar spine, degenerative grade 1 anterolisthesis of L4, and mild to moderate degenerative disc disease at L4-L5 and L5-S1. *(See id.)*. The anterolisthesis was "new in appearance from the previous [June 26, 2006] study." (*Id*. at 275). This x-ray report, however, was not explicitly mentioned by ALJ Reynolds in his opinion. ALJ Reynolds did, however, cite Exhibit B8F, which is a Physical Residual Functional Capacity Assessment conducted by State agency consultative examiner Lisa Stone on August 10, 2010. (*See id.* at 23 (ALJ Reynolds rejecting the previous, sedentary RFC, because "the objective medical evidence of record and the claimant's various MRI[s], physical examinations and activities of daily living do not support such a restricted range of activities"), 298). Page 8 of that Assessment ("Additional Comments") contains a short summary of the April 2010 x-ray findings. This page also

11

includes a description of the July 2008 MRI report and the August 2, 2010, report from consultative examiner Gary Stewart, Ph.D. (*See id.* at 298). Ms. Stone adopted ALJ Keller's RFC findings, including a ten-pound weight-lifting limitation, citing the 1998 Acquiescence Ruling. (*See id.* at 292). She also gave "great weight" to Dr. Abdolmohammadi's opinion. (*Id.* at 297).

Upon consideration, ALJ Reynolds did not adequately explain his rejection of Dr. Abdolmohammadi's findings. In particular, there needed to be a detailed discussion of the MRI and x-ray reports and how that medical evidence supported or undermined Dr. Abdolmohammadi's opinion.

### c. The Road Trips to Florida and Georgia, Plaintiff's Demeanor During the Administrative Hearing, and Plaintiff's Activities of Daily Living.

ALJ Reynolds stated that Plaintiff's claims regarding his medical symptoms were "not fully credible." (*See* A.R. 23). For instance, Plaintiff claimed that he could not stay in one position for more than five minutes without being in intense pain, yet Plaintiff was somehow able to be in a car for many hours on regular drives to Florida and Georgia to obtain prescriptions. (*See id.* at 21; *see also id.* at 455, 464-65, 470, 476, 478, 483 (medical records from trips to Florida and Georgia). (Plaintiff argues that he was able to travel the long distances by reclining in the back of the car as his daughter drove, and that he traveled to these distant states because medical care was significantly cheaper there (*see* R. 10-1, at 6; A.R. 35, 38-39).) ALJ Reynolds observed that Plaintiff was able to sit through the one-hour hearing, "in apparent comfort throughout" and "without any indication of distraction due to any cause." (A.R. 23-24). Plaintiff had received very little "actual treatment" for his alleged condition, "as opposed to the 'large quantities of' narcotics he is prescribed in Florida," said ALJ Reynolds. (*Id.* at 23). Lastly, noted ALJ Reynolds, the record contained evidence

12

that Plaintiff had the ability to walk effectively. (*See id.* at 18, 373 (March 21, 2009, medical report from the University of Kentucky); 19, 285 (Gary Stewart, Ph.D.'s August 2010 evaluation, which report had been requested by the Commissioner)).

The ALJ's focus on Plaintiff's lengthy road trips does not adequately support the changed RFC. ALJ Reynolds implied that being able to ride in a car for many hours was indicative of medical improvement. But ALJ Reynolds did not explain how the ability to ride in a car—even for lengthy periods—demonstrates that a person is able to perform limited light work, including the ability to lift up to twenty pounds. (*See* A.R. 22). Nor did the ALJ adequately explain how the ability to sit for an hour-long hearing constitutes new and material evidence to change the limited sedentary RFC to a limited light RFC. Again, the Court notes that the previous RFC indicated that Plaintiff could sit for six hours per workday and could stand for up to two hours per workday. Next, while ALJ Reynolds criticized Plaintiff for not having received much "actual treatment," Dr. Tibbs advised against surgery. (*Id.* at 211). Finally, while ALJ Reynolds noted that Plaintiff was able to ambulate effectively, so too did ALJ Keller. (*See id.* at 63). The present analysis requires significant improvement in Plaintiff's condition, and that has not been shown. *See Drummond*, 126 F.3d at 843.

To sum up this section, ALJ Reynolds did not adequately support his decision to reject ALJ Keller's "limited sedentary" RFC, for *Drummond* purposes. ALJ Reynolds provided incomplete descriptions of the 2008 and 2010 MRIs. His rejection of Dr. Abdolmohammadi's opinion was not based on substantial evidence. And ALJ Reynolds failed to establish how the road trips to Florida and Georgia, as well as Plaintiff's courtroom demeanor and other activities of daily living, constituted new and material evidence that Plaintiff's condition had improved since the time of the first administrative decision. For all of these reasons, remand of the case is appropriate.

13

> **B.  The ALJ appropriately determined the Plaintiff's impairments did not meet or equal Listing 1.04 of the Listing of Impairments for Disorders of the Spine.**

Next, Plaintiff briefly argues that the ALJ should have determined that he met Listing 1.04. The entirety of Plaintiff's argument, including the section heading, is as follows:

> The Claimant meets listing 1.04 because he has degenerative disc disease with compromise of the S1 nerve root accompanied by a decreased range of motion and lumbar spinal stenosis with pain in his hip and leg and weakness resulting in inability to ambulate effectively. It was error for the ALJ not to find that the Claimant meets listing 1.04. The elements of the listing are met and supported by objective medical evidence including MRI, x-ray, positive Patricks and other tests.

(R, 10-1, at 6 (formatting altered)). This argument fails.

As an initial matter, Plaintiff has not provided the Court with any particular citation to the record, in violation of the Court's Standing Scheduling Order from March 26, 2013. (*See* R. 9, at 3-4). In that Order, the Court said the following:

> The parties shall provide the Court with *specific page citations to the administrative record* to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments. . . . Failure to provide specific citations to the record may constitute grounds for denial of the motion.

(*Id.* (emphasis added) (citing *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006))). Because Plaintiff has not provided specific page citations for this argument, the claim fails. Nonetheless, the Court will briefly examine this argument.

Plaintiff has the burden of demonstrating that his impairment meets or equals a listed impairment. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). Listing 1.04 reads as follows:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root . . . or the spinal cord. With:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04 (2013). Therefore, to satisfy the requirements of Listing 1.04, Plaintiff must have: (1) a disorder of the spine, resulting in compromise of a nerve root or the spinal cord; and (2) symptoms that meet Subpart A, B, or C. And Plaintiff must show that he meets *all* of the criteria for that listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990) (noting, "An impairment that manifests only some of [the impairment] criteria, no matter how severely, does not qualify") (citation omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009); 20 C.F.R. § 416.925(c)(3).

Only sections A and C will be discussed here, as Plaintiff has not argued that he suffers from spinal arachnoiditis. From the face of the allegations, Plaintiff has not satisfied Listing 1.04A because he has not alleged that he suffers from sensory or reflex loss. (*See* R. 10-1, at 6). As for Listing 1.04C, Plaintiff alleges that he suffers from lumbar spinal stenosis resulting in an inability to ambulate effectively. (*See id.*). But this argument is unpersuasive. The ALJ indicated that

Plaintiff could ambulate effectively, and cited two medical reports in the record. (*See* A.R. 18-20). A medical report from March 21, 2009, from the University of Kentucky Medical Center indicated that Plaintiff had a normal gait. (*See id.* at 18-19, 217). Dr. Stewart's report from August 2, 2010, said this as well. (*Id.* at 19, 285). Accordingly, the ALJ's decision as to Listing 1.04C was supported by substantial evidence, and Plaintiff's arguments fail.

### C. Plaintiff's argument regarding Grid Rule 201.09 is premature at this time, because remand is first appropriate to determine whether the prior administrative decision as to Plaintiff's RFC should bind the Commissioner.

Plaintiff's final argument is that he met Grid Rule 201.09 when he turned fifty years old— before ALJ Reynolds issued his opinion —"because [Plaintiff] was then considered closely approaching advanced age,[5] ha[d] a limited education, ha[d] unskilled prior work experience, and [was] limited to a reduced range of sedentary work."[6] (R. 10-1, at 7).

The Court does not need to address this argument at this time. Plaintiff's argument is predicated on a finding that the 2008 administrative decision—including its sedentary RFC—should apply here. But as noted above, remand is first needed for the Commissioner to reconsider whether

---

[5] An individual is considered to be "approaching advanced age" when the individual is between fifty and fifty-four years old. 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(g) (2013).

[6] As stated in Defendant's Motion for Summary Judgment,
 The Social Security regulations contain a section called the Medical Vocational Guidelines. . . . These guidelines, also known as "the Grids[,]" allow for consideration of factors such as age, exertional ability, and educational level. The various combination of these factors yields a finding of "disabled" or "not disabled."
(R. 13, at 10 n. 11 (citing 20 C.F.R. pt. 404, subpt. P, app. 2 (2013))). Under Table 1 of this C.F.R. section, a claimant limited to sedentary work, who is approaching advanced age, who has "limited or less" education, and who is unskilled or has no past relevant work experience, would be considered disabled. 20 C.F.R. pt. 404, subpt. P, app. 2, tbl. 1 (2013). At the hearing, the VE noted that if Plaintiff retained the RFC for sedentary work, Plaintiff would be considered disabled under this Grid section. (*See* A.R. 52-53).

*Drummond* obligates the Commissioner to adopt ALJ Keller's sedentary RFC. Thus, this third argument is premature.

## IV. CONCLUSION AND RECOMMENDATION

As explained above, the ALJ's decision failed to sufficiently identify all of the new medical evidence/findings since the prior decision, adequately explain how this new and material evidence showed significant improvement, and adequately explain the evidentiary basis for rejecting the consultative examiner's opinion.

Accordingly, **IT IS RECOMMENDED** as follows:

(1) Plaintiff's Motion for Summary Judgment (R. 10) be **denied in part** as to Plaintiff's request for the Court to award benefits, and be **granted in part** to the extent this matter be remanded to the Commissioner for further proceedings as recommended herein.

(2) Defendant's Motion for Summary Judgment (R. 13) to affirm the September 16, 2011, decision as supported by substantial evidence be **denied.**

(3) Judgment be entered **reversing** the ALJ's September 16, 2011, decision that Plaintiff is not disabled and **remanding** this matter for additional administrative proceedings, in accordance with sentence four of 42 U.S.C. § 405(g).

On remand, the Commissioner must do the following:

(a) Reconsider whether the Commissioner has met the burden to show significant improvements as set forth in *Drummond*; and

(b) If benefits are not awarded based upon the prior administrative determination as to RFC, review Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and thus entitled to benefits.

Specific objections to this Report and Recommendation must be filed within **fourteen (14) days** of the date of service or further appeal is waived. 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir.), *aff'd*, 474 U.S. 140 (1985). A party may file a response to another

party's objections within **fourteen (14) days** after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

  Dated this 7th day of August, 2013.



Signed By:
*Candace J. Smith*
United States Magistrate Judge

G:\DATA\social security\13-22 Eversole R&R.wpd